**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin (253265)
david@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**360 CONSUMER LAW**
Kyle Gurwell (289298)
kng@lawofficekg.com
10055 Slater Ave., Suite 250
Fountain Valley, CA 92708
Telephone: (562) 600-9989

*Attorneys for Plaintiff,*
Josh Ivey

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOSH IVEY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JPMORGAN CHASE BANK, N.A.; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; AND TRANS UNION LLC,**<br><br>**Defendants.** | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>**(1) FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, *ET SEQ.*; AND,**<br>**(2) THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT (“CCCRAA”), CAL. CIV. CODE § 1785.1, *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

## INTRODUCTION

1. Plaintiff JOSH IVEY ("Plaintiff") brings this action for actual damages, punitive damages, statutory damages, attorney fees and costs, injunctive relief, and any other relief the court deems proper against Defendant(s) JPMORGAN CHASE BANK, N.A. ("Chase"); EQUIFAX INFORMATION SERVICES LLC ("Equifax"); EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"); and TRANS UNION LLC ("Trans Union") (together the "Defendants") for violations of: (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.; and (2) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, *et seq*. ("CCCRAA") stemming from Defendants' inaccurate credit reporting.
2. This action arises out of Defendants' unlawful conduct in reporting various late payments to Plaintiff's credit reports, despite Plaintiff's compliance with his repayment schedule under a Balance Liquidation Program with Chase.
3. The California legislature has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.
4. Credit reporting has become a vital and essential tool in our everyday lives, as creditors, potential creditors, landlords, lessors, and employers all use credit reporting as a basis for screening applicants and consumers to determine whether to enter into business relations with the applicant. As such, the CCCRAA was enacted to ensure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy.
5. In addition, the United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued

functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6. Plaintiff makes these allegations on information and belief, except for those allegations that pertain to the Plaintiff, or to the Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

7. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

8. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

9. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principals, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

**JURISDICTION AND VENUE**

10. This action arises out of Defendants' violations of the FCRA and Chase's violations of the CCCRAA.

11. Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1681p (FCRA); and 28 U.S.C. § 1367 for the supplemental state claim under the CCCRAA which is related to claims in the action within such original jurisdiction and form part of the same case or controversy under Article III of the United States Constitution.



KAZEROUNI LAW GROUP, APC

12. The violations alleged herein against Plaintiff, at all relevant times herein, occurred in the county of Orange County, State of California, where Plaintiff resides and within this District.

13. Because Defendants conduct substantial business within the State of California (including the County of Orange), personal jurisdiction is established, and Defendant Experian is headquartered in the County of Orange and within this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiff resides in this judicial district, Defendants transact business here, and because Experian is headquartered here.

## PARTIES

15. Plaintiff is a natural person who, at all relevant times alleged herein, resides in the County of Orange, State of California.

16. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

17. Plaintiff is also a "person" as defined by Cal. Civ. Code § 1785.3(j).

18. Upon information and belief, Defendant Chase is a national banking association charted under federal law and is a "person" as defined by Cal. Civ. Code § 1785.3(j). Plaintiff is also informed and believes that Chase's principal place of business is located at: 270 Park Avenue, New York, NY as well as offices located at 1111 Polaris Parkway, Columbus, OH 43240.

19. This case involves Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(c) and 15 U.S.C. § 1681a(d)(1) in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information to and by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.



KAZEROUNI LAW GROUP, APC

20. Chase is also a furnisher of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

21. Upon information and belief, Experian is a California corporation operating from an address of 475 Anton Blvd., Costa Mesa, CA 92626, and is a "person" as defined by 15 U.S.C. § 1681a(b).

22. Upon information and belief, Equifax is a limited liability company located in the State of Georgia and is a "person" as defined by 15 U.S.C. § 1681a(b).

23. Upon information and belief, Trans Union is a corporation located in the State of Illinois and is a "person" as defined by 15 U.S.C. § 1681a(b).

24. Equifax, Trans Union, and Experian are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) (Equifax, Trans Union, and Experian are collectively referred to as "Credit Reporting Agencies" or "CRAs").

## FACTUAL ALLEGATIONS

25. At all times relevant, Plaintiff is an individual residing within the State of California.

26. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Chase conducts and continues to conduct business in the State of California and within this District.

27. Sometime prior to October 2024, Plaintiff incurred a financial obligation to Chase relating to a Chase Account ending in account number 2848 (the "Account").

28. Sometime towards the end of 2024, Plaintiff became worried about his ability to keep up with the monthly minimum payments on the Account since the outstanding balance was substantial and Plaintiff was experiencing unforeseen financial challenges.

29. On or about October 21, 2024, Plaintiff contacted Chase regarding his concerns about being able to keep up with the payments on the Account because he did not



KAZEROUNI LAW GROUP, APC

want to incur any late payments on his personal credit report.

30.Plaintiff's personal credit was particularly important to him during this time as he was in the process of attempting to obtain a HELOC or a second mortgage to pay for household and family related expenditures.

31. During that October 21, 2024 call, Plaintiff spoke with a representative from Chase's Credit Bureau Department named "Angela", who confirmed that, as of that date, no late payments had been reported to Plaintiff's personal credit report relating to the Account.

32.During this call Plaintiff stressed to Angela the importance of preserving Plaintiff's personal credit score as Plaintiff was in the process of refinancing a few properties and could not take the risk of his personal credit score being impacted. Angela again assured Plaintiff that no late payments had been reported on the Account.

33.Angela then advised Plaintiff to enroll into a Balance Liquidation Program ("BLP") to prevent future negative reporting. Plaintiff expressed to Angela that he was interested in seeing if he qualified for this BLP in order to protect is credit.

34.Angela then transferred Plaintiff to another Chase employee to discuss whether Plaintiff could enroll in the BLP.

35.After asking Plaintiff a series of questions, the second Chase employee explained to Plaintiff that he was approved for the BLP, which would result in the Account being closed, but lower Plaintiff's monthly payment obligations towards the Account to just $933 a month with 0% interest for five years.

36. Relying on the Chase representatives' representations that no late payments had been reported, and that no late future late payments would be reported if Plaintiff kept up with the terms of the BLP, Plaintiff enrolled in the BLP over the phone.

37.Plaintiff also authorized his first payment under the BLP during the phone call that day.

38.That same day, Chase sent Plaintiff a letter dated October 21, 2024, confirming



KAZEROUNI LAW GROUP, APC

that Chase spoke with Plaintiff by phone and that Plaintiff authorized automatic payments in the amount of $993 per month from October 22, 2024 through September 22, 2029.

39. Plaintiff received a second letter dated October 23, 2024, titled "Highlights of the Balance Liquidation Program," which confirmed Plaintiff's enrollment in the BLP.

40. That October 23, 2024 letter further confirmed that under the BLP, Plaintiff entered into a five-year repayment plan, requiring monthly payments of $993 at 0% interest. That letter also explained that Chase would not charge late or returned payment fees during the BLP.

41. Pursuant to the automatic payment plan under the BLP, Chase withdrew $993 from Plaintiff's other payment account and applied it towards the Account on October 22, 2024; November 22, 2024; and December 22, 2024.

42. In December of 2024 and January of 2025, Plaintiff reviewed his credit reports to ensure the Account was being reported accurately since he had made timely payments under the BLP.

43. To Plaintiff's surprise, the Account was being reported to his credit reports as 60-days late for the months of October, November, and December of 2024, despite Plaintiff making timely payments towards the Account under the BLP during these months.

44. Confused by the inaccuracies on his credit reports, Plaintiff immediately contacted Chase in December of 2024 and spoke to a supervisor named "Cathy." Cathy informed Plaintiff that she would be filing a complaint Plaintiff's behalf and that Plaintiff would receive a follow-up communication regarding Chase's investigation.

45. However, Chase never contacted Plaintiff regarding its findings as to Plaintiff's dispute.

46. Growing frustrated by these substantial derogatory marks on his credit reports and



KAZEROUNI LAW GROUP, APC

facing the possibility of having to sell his personal residence to make ends meet due to the inability to secure refinancing or a HELOC, on or about January 21, 2025, Plaintiff against contacted Chase to address the inaccuracies on his credit report.

47. Plaintiff was eventually transferred to an employee named "Mariella" at Chase's Credit Bureau Escalations Department. Plaintiff explained the situation to Marielle, including the fact that that whole reason Plaintiff contacted Chase in October of 2024 was to get information on the status of his Account, so that Plaintiff could make an informed decision on what steps he needed to take to prevent his personal credit from being negatively impacted.

48. Mariella assured Plaintiff Chase's investigation team would listen to a recording of Plaintiff's October 21, 2024 call with Chase, and that if Chase provided any misinformation to Plaintiff, Chase's policy would be to immediately remove of the negative reporting from Plaintiff's credit report.

49. Mariella promised to follow up with Plaintiff on January 27, 2025, to discuss the findings of Chase's investigation. However, Plaintiff never heard from Chase.

50. Then, on or around January 29, 2025, Plaintiff contacted the Chase's Credit Bureau Escalations Department to request an update.

51. Plaintiff eventually got in touch with Mariella again to discuss the results of her investigation. Mariella told Plaintiff that Chase would not remove the negative information from Plaintiff's credit report and that Plaintiff's only option was to submit a written dispute to Chase Card Services to initiate a re-investigation of the reporting of the Account.

52. Aside from Chase's representations that the Account was in good standing in October of 2024, Chase's late reporting during the months of October, November and December of 2024 are factually inaccurate. The BLP modified Plaintiff's obligations towards the Account, and Plaintiff did not, and has not, missed a single payment under the BLP. As a result, there was no valid basis for Plaintiff to be

KAZEROUNI LAW GROUP, APC

reported late after he enrolled in the BLP.

53. Despite Chase inaccurately reporting Plaintiff as 60-days late during October, November and December of 2024, Plaintiff kept up with the timely payments towards the Account under the terms of the BLP.

54. However, Plaintiff wanted to be able to utilize his credit that had been severely impacted by the three months of negative reporting.

55. As a result, on or around April 22, 2025, Plaintiff sent written disputes, dated April 15, 2025, via certified mail, to Experian, Equifax, Trans Union and to Chase Card Services concerning the inaccurate late payments on the Account.

56. In these April 2025 disputes, Plaintiff included: (1) a detailed narrative concerning the inaccurate late payments and his enrollment in the BLP; (2) his name and personal identifying information as well as information relating to the Account; and (3) the names of the Chase employees Plaintiff spoke with.

57. Plaintiff also attached to each dispute: (1) the two October 2024 letters from Chase confirming his enrollment in the BLP and laying out the automatic payment plan terms, (2) proof Plaintiff paid the payments under the BLP on time; and (3) a copy of his credit report showing the inaccurate late payments on the Account.

58. Chase received this April 2025 written dispute on April 29, 2025; Experian and Trans Union received it on April 26, 2025; and Equifax received it on May 1, 2025. And, upon information and belief, the disputes to the CRAs were forwarded to Chase.

59. However, these inaccuracies continued to be reported to Plaintiff's credit reports.

60. In letters dated May 18, 2025, and May 20, 2025, Chase acknowledged receipt of Plaintiff's written disputes but failed to provide any substantive response regarding its investigation. This failure to properly investigate Plaintiff's claims baffled Plaintiff as Chase should have been able to determine from its own records that the Account was paid in accordance with the terms of the BLP, and the reporting of that Account should have been updated to reflect timely payments

from October 2024 and on.

61. In a letter dated May 15, 2025, Equifax reported the results of its dispute investigation, stating that the "creditor has verified to our company that the current status is being reported correctly." After receiving Plaintiff's April 2025 written dispute, Equifax continued to report the Account inaccurately, and as being 60-89 days late during the months of November 2024; December 2024 and January 2025.

62. Similarly, in a letter dated May 15, 2025, Trans Union responded to Plaintiff's dispute but did not correct the inaccurate reporting of 60-day delinquencies for October, November and December 2024.

63. Additionally, Plaintiff received Experian's dispute investigation results on May 27, 2025, which continued to show inaccuracies, and reflected the Account as 60-days late in October, November and December 2024, despite Plaintiff's timely payments.

64. Upon information and belief, Plaintiff's written disputes to the CRAs were sent to Chase to conduct an investigation.

65. Interestingly, the CRAs are presently reporting late payments during different months, with Experian and Trans Union reporting late payments from October 2024-December 2024; and Equifax reporting late payments for November 2024-January 2025.

66. Even a cursory investigation would reveal that these late payments are reporting inaccurately as Plaintiff provided each Defendant with enough information with his written disputes to determine Plaintiff was adhering to the terms of the BLP. Chase also possessed this information based on its own internal records, payment history for the Account, and call recording data.

67. As of the date of the filing of this Complaint, the Account is still being reported inaccurately and/or in a misleading manner because the Account is being reported as late following Plaintiff's enrollment in the BLP, which is inaccurate,



KAZEROUNI LAW GROUP, APC

misleading, and false because Plaintiff has made all payments timely under the BLP.

68. As the data furnisher for Plaintiff's Account, Chase has control over reporting the status of Plaintiff's Account, including suppression of delinquency reporting, modifying or updating the account's status, or removing it entirely.

69. Similarly, each of the CRAs has a duty to reasonably investigate Plaintiff's written disputes, which was clearly not done here. Upon information and belief, as of the date of the filing of this Complaint, the Chase Account is being reported inaccurately.

70. On information and belief, Chase failed to request that the credit reporting agencies update the reporting of the Account to reflect that the Account was being properly paid and was not delinquent.

71. Chase continues to report the Account to Plaintiff's credit reports as being 60-days late over the course of several months, despite having previously assured Plaintiff that continued payment under the BLP would prevent the Account from being negatively reported. Chase has not taken affirmative steps correct the reporting of the Account.

72. Through this conduct, Chase has violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that Chase knew or should know was inaccurate.

73. Chase submits inaccurate credit information regarding Plaintiff to the credit reporting agencies every thirty days, beginning as early as November of 2024 and continuing through the date of this Complaint.

74. Chase's continued inaccurate and negative reporting of the inaccurate and misleading information to Plaintiff's credit reports in light of Chase's knowledge of the actual error was willful.

75. Chase's continued inaccurate and negative reporting of the inaccurate and misleading information to Plaintiff's credit reports in light of Chase's knowledge

KAZEROUNI LAW GROUP, APC

of the actual error was reckless.

76. Chase's failure to correct the inaccuracies on Plaintiff's credit reports was also intentional and in reckless disregard of Chase's duty to refrain from reporting inaccurate information.

77. Accordingly, Chase willfully and negligently failed to comply with Chase's duties to only furnish accurate information.

78. Chase's inaccurate, misleading, and negative reporting of the Account damaged Plaintiff's creditworthiness and has affected Plaintiff negatively due to the misleading nature of Chase's inaccurate credit reporting.

79. Upon the Account being reported late towards the end of 2024, Plaintiff's credit score decreased dramatically.

80. Plaintiff has also spent countless hours attempting to remedy this inaccurate information with Chase and the CRAs.

81. This has caused significant harm to Plaintiff's credit score, impacted Plaintiff's ability to benefit and utilize his credit. Plaintiff came dangerously close to having to sell his personal residence in order to make ends meet because Defendants' inaccurate reporting destroyed his credit and prevented him from qualifying for refinancing or a HELOC. Plaintiff was only able to temporarily avoid selling his home by securing short-term tenants, which will allow him to maintain the property until approximately April 2026. However, absent correction of the inaccurate reporting, Plaintiff will most likely be forced to sell his home at that time because he will remain unable to refinance or otherwise restructure his housing-related debt.

82. Despite Plaintiff's repeated attempts to remedy the inaccuracies, Chase continues to incorrectly report the Account as 60-days late on Plaintiff's credit report, causing Plaintiff to suffer actual damages, including emotional distress and have adverse credit through no fault of Plaintiff.

83. Plaintiff's continued efforts to correct Defendants' erroneous and negative



KAZEROUNI LAW GROUP, APC

reporting by communicating Plaintiff's disputes with the Credit Bureaus were fruitless.

84. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

85. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

86. Indeed, Plaintiff faced adverse rates when refinancing his investment property and was unable to obtain a home equity line of credit or second mortgage financing at a preferred rate, due to the inaccuracies on his credit reports concerning the Account.

87. Plaintiff was unable to refinance his property, which negatively affected his divorce proceedings because he could not pay his ex-wife within the time agreed upon in the settlement, resulting in additional cost to the Plaintiff of approximately $25,000.

88. Because Plaintiff's ability to refinance was destroyed, he was unable to pay his ex-wife the agreed-upon equalization amount by the deadline established in the divorce judgment. As a direct result, Plaintiff was forced to pay an additional $25,000 to his ex-wife, and he fell behind on spousal and child support obligations. These delays caused substantial conflict, anger, and shame in Plaintiff's relationship with his ex-wife and disappointment from his children, all occurring during the fragile tail-end of a three-year divorce process.

89. Defendants' conduct alleged herein has caused Plaintiff financial condition to deteriorate. He became unable to afford the premiums for the health insurance plan he had maintained without issue for nearly a decade. As a result, Plaintiff lost his health insurance coverage, and he now faces the prospect of managing his stress-related symptoms without the ability to access adequate medical care.

90. On multiple occasions, Plaintiff has suffered the humiliation of having to abandon groceries at the checkout register because his bank account, drained by the



KAZEROUNI LAW GROUP, APC

financial crisis Defendants caused, was unexpectedly overdrawn and Plaintiff lacked even a single emergency credit card. After being unable to complete the purchase, Plaintiff was forced to leave the groceries behind and drive 45 minutes to his mother's home for an unexpected meal. This incident caused Plaintiff deep shame and fear, and remains a vivid, painful example of the daily harm caused by Defendants' inaccurate credit reporting.

91. Plaintiff has been forced on multiple occasions to borrow money from his 80-year-old mother, who is on a fixed income, in order to cover his living expenses, causing strain on his relationships with his adult siblings.

92. Plaintiff's business suffered losses as he was unable to solve cash flow issues because he could not be approved for any personal on business credit cards due to his credit score being low.

93. As a result, Plaintiff has lost customers because he couldn't afford to purchase the goods necessary to fulfill customer orders, and has also lost key relationships with vendors.

94. Defendants' conduct alleged herein has also caused Plaintiff emotional distress that continues through the present day as the Chase Account continues to be inaccurately reported to Plaintiff's credit reports.

95. Plaintiff has spent countless hours disputing this inaccurate information without success.

96. Plaintiff has been unable to achieve a full night's sleep for approximately a year and frequently awakens throughout the night with nightmares about losing everything and being unable to provide for his family, causing Plaintiff to be drowsy during work hours and drastically reducing his productivity.

97. As a result of Defendants' conduct alleged herein, Plaintiff lives in constant shame due to relentless credit calls, anger from his ex-wife and family, and disappointment of his four children, whom he had always been able to provide for until now.



KAZEROUNI LAW GROUP, APC

98. Plaintiff experiences such severe daily stress that he has lost his appetite and now eats only one meal per day, and on some days does not eat at all.

99. Defendants' conduct also caused a compounded financial snowball effect in Plaintiff's life. Because his credit was severely damaged, Plaintiff faced exorbitant late fees and punitive interest rates on multiple financial obligations, which increased his monthly expenses across nearly all categories. Plaintiff fell behind on his tax obligations and has been unable to obtain even modest personal or business credit to stabilize his cash flow. This compounding financial pressure continues to affect Plaintiff daily.

100. Plaintiff's anxiety, frustration, stress, lack of sleep, nervousness, anger, and embarrassment continues to this day because the inaccurate reporting of the Account mischaracterizes Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score that is otherwise in good standing.

101. Defendants' conduct alleged herein has also caused Plaintiff to experience physical manifestations of the emotional toll this situation has taken on his health. At the same time, Plaintiff's loss of health insurance has placed him in the frightening position of lacking the ability to obtain routine medical care. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of the possibility of credit denials.

102. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

103. By intentionally reporting inaccurate information, Defendants acted in conscious disregard for Plaintiff's rights.

104. Since Plaintiff's efforts to correct his credit report were unsuccessful, Plaintiff

KAZEROUNI LAW GROUP, APC

was required to bring this action to finally resolve Plaintiff's remaining disputes.

**ACTUAL DAMAGES**

105. As a result of Defendants' actions, omissions, and willful action and inaction, Plaintiff has suffered damage by loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, invasion of privacy, personal embarrassment, loss of personal reputation, loss of productive time, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

106. Plaintiff's injuries are concrete. Defendants' conduct of reporting inaccurate and derogatory information is analogous to the common law tort of defamation.

107. Furthermore, the Legislature enacted the FCRA and the CCCRAA to protect consumers from precisely the conduct described in this Complaint. The banking system is dependent upon fair and accurate credit reporting; and inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

108. Consequently, the FCRA and the CCCRAA were enacted to insure fair and accurate reporting, promote efficiency in the banking system, protect consumer privacy, and to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

109. The alleged transgressions by Defendants would, if left unchecked in a competitive marketplace, naturally propagate had the Legislature not created laws to give vulnerable consumers a voice and a mechanism for private enforcement.

//

//

KAZEROUNI LAW GROUP, APC

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681E(B)
### [AS TO EQUIFAX, EXPERIAN, AND TRANS UNION]

110. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

111. Defendants violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintains concerning the Plaintiff.

112. As a result of the conduct, actions and inactions of Defendants, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

113. The conduct, actions and inactions by Defendants were willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were at a minimum negligent entitling Plaintiff to recover under 15 U.S.C. §1681o.

114. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681I(A)(1)
### [AS TO EQUIFAX, EXPERIAN, AND TRANS UNION]

115. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

116. Defendants violated 15 U.S.C. §1681i(a)(l) by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and



KAZEROUNI LAW GROUP, APC

record the current status of the disputed information or delete the item from the Plaintiff's credit files.

117. As a result of the conduct, actions, and inactions of Defendants, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

118. The conduct, actions, and inactions by Defendants were willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent entitling Plaintiff to recover under 15 U.S.C. §1681o.

119. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT III
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681I(A)(4)
## [AS TO EQUIFAX, EXPERIAN, AND TRANS UNION

120. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

121. Defendants violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

122. As a result of the conduct, actions, and inactions of Defendants, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

123. The conduct, actions and inactions by Defendants was willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.



KAZEROUNI LAW GROUP, APC

124. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT IV**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**16 U.S.C. § 1681I(A)(5)(A)**
**[AS TO EQUIFAX, EXPERIAN, AND TRANS UNION]**

125. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

126. Defendants violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate item of information from Plaintiff's credit file or modify the item of information upon an accurate reinvestigation.

127. As a result of the conduct, actions and inactions of Defendants, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

128. The conduct, actions and inactions by Defendants was willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

129. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT V**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681S-2(B)(1)(A)**
**[AS TO CHASE BANK]**

130. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

131. Chase Bank violated 15 U.SC. § 1681s-2(b)(1)(A) by failing to conduct a

reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or request the item to be permanently deleted Plaintiff's credit files.

132. Accordingly, Chase failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s- 2(b)(1)(A) by failing to remove all of the disputed and incorrect information.

133. As a result of the conduct, actions and inactions of Chase, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

134. The conduct, actions, and inactions by Chase were willful, rendering Chase liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Chase was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

135. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Chase in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT VI**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681S-2(B)(1)(B)**
**[AS TO CHASE BANK]**

136. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

137. Chase violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Plaintiff in the disputes to the Credit Bureaus and to Chase.

138. As a result of the conduct, actions and inactions of Chase, Plaintiff suffered actual damages including without limitation, by example only and as described

KAZEROUNI LAW GROUP, APC

herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

139. The conduct, actions and inactions by Chase were willful, rendering Chase liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

140. In the alternative, Chase was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

141. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Chase in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT VII
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681S-2(B)(1)(C)-(E)
## [AS TO CHASE BANK]

142. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

143. Chase violated 15 U.S.C. § 1681s-2(b)(1)(C)–(E) by willfully and negligently failing to:

a. report the results of its investigation to the consumer reporting agencies;
b. if the investigation found that the information was incomplete or inaccurate, report those results to all other consumer reporting agencies to which Chase furnished such information; and
c. upon determining that the disputed information was inaccurate, incomplete, or could not be verified, promptly modify, delete, or permanently block the reporting of that item of information.

144. As a result of the conduct, actions, and inactions of Chase, Plaintiff suffered actual damages including, without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

145. The conduct, actions, and inactions by Chase were willful, rendering Chase liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

146. In the alternative, Chase was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

147. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Chase in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n and 1681o.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT ("CCCRAA")**
**CAL. CIV. CODE § 1785.1, *ET SEQ.***
**[AS TO CHASE BANK]**

148. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

149. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

150. In the regular course of its business operations, Defendant routinely furnishes information to credit reporting agencies pertaining to transactions between Chase and Chase's consumers, thereby providing information to the credit reporting agencies regarding a consumer's credit worthiness, credit standing and credit capacity.

151. Because Chase Bank is a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Chase is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

152. Chase should have determined that its reporting was inaccurate and/or



KAZEROUNI LAW GROUP, APC

misleading through review of Chase's own internal business records, account notes and communications.

153. It is simply factually inaccurate for Chase to report the Account as being 60-days late in the months of October, November and December 2024 as well as January of 2025, when Plaintiff made timely payments to the Account while enrolled in the BLP.

154. However, despite this knowledge that Plaintiff had made on time payments, Defendant continues to report the Account inaccurately to Plaintiff's credit reports.

155. As a result of the willful, negligent, and/or reckless actions and inactions of Chase, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit (including refraining from using credit), damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

KAZEROUNI LAW GROUP, APC

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for:

### AS TO COUNTS I THROUGH VIII
### (VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.)

156. For an award of actual damages in an amount to be proven at trial, including but not limited to loss of credit, financial harm, damage to reputation, embarrassment, humiliation, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1).

157. For statutory damages of up to $1,000 per violation for each incident of willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n(a)(1)(A).

158. For punitive damages, in an amount to be determined by the Court, against each Defendant for each incident of willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n(a)(2).

159. For reasonable attorney's fees and costs incurred in this action pursuant to 15 U.S.C. §§ 1681n and 1681o.

160. For an order directing Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and JPMorgan Chase Bank, N.A. to immediately delete, correct, or permanently block the inaccurate and/or misleading information from Plaintiff's credit reports and files and to cease reporting such inaccurate information to any and all persons or entities to whom they furnish consumer credit information.

161. For an order directing Defendants to send corrected and updated information to all persons and entities to whom they have reported Plaintiff's inaccurate credit information within the last three (3) years.

162. For such other and further relief as the Court may deem just, proper, and equitable.

**AS TO COUNT VIII**
**(VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785.1 ET SEQ., AS TO CHASE BANK)**

163. For an award of actual damages, including court costs, loss of wages, and pain and suffering, pursuant to Cal. Civ. Code § 1785.31(a)(1).

164. For reasonable attorney's fees and costs pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and 1785.31(d).

165. For punitive damages according to proof, including an award of punitive damages of $100 to $5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B).

166. For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b), including an order directing Defendant JPMorgan Chase Bank, N.A. to immediately delete all inaccurate or misleading information concerning Plaintiff's Account from Plaintiff's credit reports and to cease reporting such inaccurate information to any and all consumer reporting agencies.

167. For an order directing Defendant JPMorgan Chase Bank, N.A. to send to all



KAZEROUNI LAW GROUP, APC

persons and entities to whom it has reported Plaintiff's inaccurate credit information within the last three (3) years Plaintiff's corrected and updated credit information.

168. For such other and further relief as the Court may deem just, proper, and equitable.

**TRIAL BY JURY IS DEMANDED**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: November 13, 2025

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *<u>/s/ David McGlothlin, Esq.</u>*
David McGlothlin, Esq.
Pamela E. Prescott, Esq.
*Attorneys for Plaintiff*